UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **VILLAJE DEL RIO, LTD.,** *et al.* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| VS. ) | Civil Action No.  SA-07-CA-947-XR |
| ) | |
| **COLINA DEL RIO, LP,** *et al.* ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

**ORDER**

Defendant DB Berkshire Mortgage, Inc. ("DBBM") filed a Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 32) in which DBBM seeks dismissal of Plaintiff's fraudulent conveyance and economic duress causes of action and dismissal of what DBBM characterizes as Plaintiff's cause of action for exemplary damages. The Court SEVERS the fraudulent conveyance cause of action from this proceeding and REFERS it to the Bankruptcy Court of the Western District of Texas. The Court DENIES the motion with respect to the economic duress and exemplary damages claims.

**I. Factual & Procedural Background**

The events leading to this lawsuit relate to a failed construction project and the subsequent bankruptcy of the project's owner and developer, Villaje Del Rio, Ltd. ("Villaje"). According to Plaintiff George Geis, on February 13, 2003, Villaje executed a non-recourse deed of trust note in the amount of $26,747,700.00 payable to Berkshire Mortgage Finance Limited Partnership, DBBM's predecessor. The proceeds of the note were to be used to finance the construction of a large multi-use residential, office and retail development in San Antonio, Texas. The note was underwritten for

project mortgage insurance by the Department of Housing and Urban Development ("HUD"). Geis also personally loaned Villaje $1,500,000.00 to finance the project.

In addition, Villaje and DBBM entered into a Building Loan Agreement under which Villaje was to submit monthly applications to DBBM for advances of proceeds from the note. The agreement required that Villaje keep the loan "in balance" — that is, ensure that sufficient funds remained available under the note at all times to complete the construction project.

On the same day, Villaje entered into a construction contract with Andres Holding Corporation ("Andres") in which Andres agreed to act as general contractor for the project. DBBM was not a party to this contract. According to Geis, the construction contract established a total maximum construction price of $20,799,199.00. The contract required Andres to submit to Villaje monthly requisitions for payment for work performed. The amount sought in any given requisition was required to be proportionate to the actual percentage of the construction project Andres completed in the prior month.

The construction contract further required Andres to submit pay applications and supporting materials to the architect of the project. The architect was required to evaluate the application and certify an amount for payment.[1] If the architect did not agree with Andres's representations of the value of work completed in a given pay application, the architect was entitled to certify an amount less than that for which Andres applied.

Some time after construction began, Andres advised Villaje that Andres would need an additional $1,320,097.00 to complete the project. Andres requested that Villaje agree to supplement

---

[1] The construction contract further required that the architect provide administration of the contract, resolve claims and disputes arising between Andres and Villaje, and issue construction directives that Andres was to follow in the absence of a change order.

the construction contract to that effect. On or around March 19, 2004, Villaje discussed Andres's request with HUD and DBBM. Villaje advised HUD and DBBM of a number of problems it was experiencing with Andres, including Andres's failure to provide a schedule for completion of the project and Andres's submission of monthly pay requisitions that were not proportionate to construction progress. Villaje further advised HUD and DBBM that Villaje suspected that Andres would require funding for concrete in an amount greater than originally estimated or agreed to in the construction contract. Villaje thus informed DBBM that Andres's requisitions and requested change order would render the note out of balance in contravention of the Building Loan Agreement.

Geis alleges that DBBM thereafter wrongfully threatened to declare Villaje in default of the note and to cease funding the project should Villaje refuse to approve Andres's requisitions and requested change order. Between April and October of 2004, Andres submitted four requisitions and a change order to which Villaje objected but approved allegedly due to DBBM's coercion. Geis contends that as a result Andres was overpaid by $1,974,385.00 based upon the actual percentage of completion.[2]

On October 28, 2004, Villaje terminated Andres for cause. In late 2004, DBBM declared Villaje in default of the note, accelerated the note, and assigned the note to HUD. HUD sold the note to Colina del Rio, Ltd. After Villaje filed for bankruptcy on May 1, 2006, Colina del Rio foreclosed its lien, and Villaje lost the construction project. Geis filed in Villaje's bankruptcy case an unsecured claim in the amount of the personal loan he made to Villaje.

Geis, in his capacity as a creditor of Villaje, now asserts a cause of action under the Texas

---

[2] Geis also contends that Andres received an additional $832,378.00 for work "not performed, double-billed, or improperly charged as an 'extra.'"

Fraudulent Transfers Act in which he seeks recovery of fraudulent conveyances Villaje allegedly made to DBBM. Additionally, Geis purchased Villaje's claims against DBBM from Villaje's trustee in bankruptcy and now asserts on Villaje's behalf tortious interference of contract and economic duress claims against DBBM. DBBM moves to dismiss under Rule 12(b)(1) and (12)(b)(6) the fraudulent conveyance and economic duress causes of action and to dismiss or strike Geis's exemplary damages pleadings.

## II.  Legal Analysis

### A.  Standards of Review for Motions to Dismiss Under Rule 12(b)(1) and 12(b)(6)

A party can seek dismissal of an action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A claim is properly dismissed for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of establishing subject matter jurisdiction in federal courts rests on the party seeking to invoke it. *Hartford Ins. Group v. LouCon Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under 12(b)(6), all factual allegations from the complaint should be taken as true. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Additionally, the facts are construed favorably to the plaintiff. *Id.* Courts may look only to the pleadings in determining whether a plaintiff has adequately stated a claim; consideration of information outside the pleadings converts the motion to one for summary judgment. FED. R. CIV. P. 12(d). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level." *Id.* A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 1965.

### B. Recovery of Fraudulent Conveyances

Geis contends that the alleged overpayments to Andres constitute fraudulent conveyances under Texas law. Specifically, Geis claims that as a result of such payments Villaje incurred obligations to DBBM without receiving reasonably equivalent value at a time when Villaje was insolvent, unable to pay debts as they became due, and/or engaged in a business or transaction for which its remaining assets were unreasonably small. *See* TEX. BUS. & COM. CODE §§ 24.005(a)(2), 24.006(a). Thus, Geis, as an unsecured creditor of Villaje, seeks judgment voiding the obligations Villaje incurred to DBBM in an amount sufficient to pay Geis's $1,500,000.00 unsecured claim against Villaje.

#### 1. The Court Has Subject Matter Jurisdiction Over the Fraudulent Conveyance Claim.

DBBM argues that the fraudulent conveyance claim should be dismissed for lack of subject matter jurisdiction because it is a core proceeding under the Bankruptcy Code over which the bankruptcy court in which Villaje's bankruptcy case is pending has exclusive jurisdiction. DBBM, however, fails to cite to any authority that supports its contention that the bankruptcy court has exclusive jurisdiction over a creditor's fraudulent conveyance claim such that dismissal of the claim would be required by this Court.

To the contrary, this Court has jurisdiction over the fraudulent conveyance claim because it

is "related to" a case brought under the Bankruptcy Code. *See* 28 U.S.C. § 1334. Congress has conferred upon the district courts original, exclusive jurisdiction over "all cases under title 11" and original, non-exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." *Id*. (emphasis added). The Fifth Circuit has "read this jurisdictional grant broadly, stating that the test for whether a proceeding properly invokes federal "related to" jurisdiction is whether the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy." *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007). "Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *Id.*

Where a debtor has incurred obligations that constitute fraudulent transfers under the Texas Fraudulent Transfer Act, the Act permits a creditor to obtain avoidance of the debtor's obligations to the extent necessary to satisfy the creditor's claim. TEX. BUS. & COM. CODE § 24.008. Geis seeks "judgment voiding the obligations [to DBBM Villaje incurred] in an amount sufficient to pay [his] unsecured claim." (Pl.'s First Am. Compl. ¶ 31.) Thus, the outcome of Geis's fraudulent conveyance claim could alter Villaje's liabilities, and the Court has subject matter jurisdiction over the fraudulent conveyance claim as it is "related to" Villaje's bankruptcy case. *See* 28 U.S.C. § 1334.

### 2. The Court Refers Geis's Fraudulent Conveyance Cause of Action to the Bankruptcy Court of the Western District of Texas.

Nevertheless, the Court finds it appropriate to sever the fraudulent conveyance cause of action from this lawsuit and refer it to the Bankruptcy Court of the Western District of Texas. "Each

district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The Court has previously ordered that all such cases and proceedings filed in this Court be automatically referred to the Bankruptcy Court of the Western District of Texas. *See* Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, W.D. Tex. Order 84-01 (August 13, 1984), *available at* http://www.txwb.uscourts.gov/pdf/general_order_bankruptcy_reference.pdf. Therefore, having determined that Geis's fraudulent conveyance cause of action is related to Villaje's pending bankruptcy case, the Court orders that the cause of action be severed from this lawsuit and referred to the Bankruptcy Court of the Western District of Texas, consistent with the court's standing order.

**C. Geis's Economic Duress Cause of Action is Not Barred by the Statute of Limitations.**

Geis asserts a claim for economic duress on the ground that DBBM's threats took unjust advantage of Villaje's economic necessity or duress to coerce Villaje into agreeing to the disputed pay requisitions and change order. Geis alleges that the events giving rise to the claim—DBBM's threats of declaring Villaje in default—began in June 2004 and continued for some months thereafter. (Pl.'s First Am. Compl. ¶¶ 12-16, 24.) DBBM contends that Geis did not previously plead the duress in the original complaint and that the claim was therefore not pled until June 22, 2008, the date of amendment. Thus, DBBM contends, the claim should be dismissed as barred by the application of the two-year statute of limitations.[3]

---

[3] DBBM contends and Geis does not dispute that a two-year limitations period applies to Geis's economic duress claim. *See also Leon y Castillo v. First City Bancorporation*, 43 F.3d 953, 963 (5th Cir. 1994) (holding two-year limitations period applies to economic duress claim brought under Texas law).

The parties dispute whether the economic duress claim was in fact pled in Geis's original complaint. Nevertheless, the Court need not determine this issue at this time. Assuming Geis first pled the duress claim in the amended complaint, the claim was timely pled under the relation-back doctrine. For limitations purposes, an amendment to a pleading relates back to the date of the original pleading when the law that provides the applicable statute of limitations allows relations back. FED. R. CIV. P. 15(c). Texas law permits relation back of amended pleadings under the following circumstances:

> If a filed pleading relates to a cause of action, cross action, counter-claim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM. CODE §16.068. Texas courts apply a two-pronged test to determine whether an amended pleading relates back to a previous pleading. First, the original causes of action asserted in the original pleading must not be time-barred, and second, the amended pleading must not be wholly based on a new, distinct, or different transaction or occurrence. *Cooke v. Maxam Tool & Supply, Inc.*, 854 S.W.2d 136, 141 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

In the original complaint, filed April 27, 2006, Geis timely pled a cause of action for tortious interference of contract.[4] Geis alleged therein that DBBM's actions interfering with Villaje's contractual right to approve or deny Andres's pay requisitions began in May of 2004 and continued for some months thereafter. Thus, Geis's claim falls within the applicable two-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Burke v. Ins. Auto Auctions Corp.*, 169

---

[4]DBBM has not argued that Geis's tortious interference claim was not timely pled.

S.W.3d 771, 776 (Tex. App.—Dallas 2005, pet. denied).

Additionally, the economic duress and tortious interference claims, as pled, arise from the same transactions and occurrences. Specifically, each cause of action arises from DBBM's alleged conduct whereby DBBM threatened to declare Villaje in default if Villaje refused to approve Andres's pay requisitions, applications, and change order. (*See* Pl.'s First Am. Compl. ¶¶ 10-18, 21-24; Pl.'s Orig. Pet. & Application For TRO ¶¶ 8-11.) Thus, even if Geis did not plead his claim for duress prior to amending the complaint, the claim was timely pled under the relation-back doctrine and will not be dismissed as untimely.

**D.   DBBM's Request that the Court Dismiss or Strike Plaintiff's Claim for Exemplary Damages is Denied.**

DBBM asserts that under a "liberal reading" of the First Amended Complaint, Geis impermissibly pled a cause of action for exemplary damages. DBBM contends that because exemplary damages are merely a remedy and not a cause of action, the Court should dismiss Geis's exemplary damages claim under Rule 12(b)(6) or, alternatively, strike it from the Complaint. DBBM correctly states that exemplary damages are merely a remedy and not a cause of action. *See Sulzer Carbomedics v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001); *Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 852 (Tex. 1995). The Court is satisfied, however, that Geis has properly pled the remedy of exemplary damages. In the paragraphs of the First Amended Complaint that immediately follow Geis's tortious interference and economic duress cause of action allegations, Geis states that he "further seeks recovery of exemplary damages as allowed by Texas law pursuant to" TEX. CIV. PRAC. & REM. CODE §§ 41.001 *et seq.* Nowhere does Geis label his exemplary damages claim as an independent cause of action. Therefore, the Court denies Defendant's request

9

that the Court dismiss or strike Geis's claim for exemplary damages.

Accordingly, the fraudulent conveyance cause of action is SEVERED from this lawsuit and REFERRED to the Bankruptcy Court of the Western District of Texas. The motion is DENIED with respect to the economic duress cause of action and the exemplary damages claim.[5]

It is so ORDERED.

SIGNED this 5th day of September, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[5] In its motion to dismiss, DBBM re-urges by reference its arguments set forth in its pending motion for summary judgment (Docket No. 18). The grounds for relief urged therein that have not been ruled upon in this Order are preserved for the Court's consideration. Additionally, all grounds for dismissal of the fraudulent conveyance claim urged by DBBM in its motion to dismiss and not ruled upon in this Order are preserved for the Bankruptcy Court's determination.