# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| VILLAJE DEL RIO, LTD. | § | |
| | § | |
| v. | § | Civil Action No. SA-07-CA-947-XR |
| | § | |
| COLINA DEL RIO, LP, et al. | § | |

**ORDER**

On this date the Court considered Defendant DB Berkshire Mortgage, Inc.'s Motion for Summary Judgment on Claims for Fraudulent Conveyance (docket no. 94).

**Summary of Facts**

The events leading to this lawsuit relate to a failed construction project and the subsequent bankruptcy of the project's owner and developer, Villaje Del Rio, Ltd. ("Villaje"). The uncontroverted summary judgment evidence establishes the following. On February 13, 2003, Villaje executed a non-recourse deed of trust note in the amount of $26,747,700.00 payable to Berkshire Mortgage Finance Limited Partnership, Defendant DB Berkshire Mortgage, Inc.'s (DBBM) predecessor ("Building Loan Agreement").[1] The proceeds of the note were to be used to finance the construction of a large multi-use residential,

---

[1] Docket no. 94, Exh. 1.

office and retail development in San Antonio, Texas.[2] The note was underwritten for project mortgage insurance by the Department of Housing and Urban Development ("HUD").[3] Plaintiff George Geis[4] also personally loaned Villaje $1,500,000.00 to finance the project.[5]

Villaje agreed in the Building Loan Agreement to make monthly applications for advances of mortgage proceeds from DBBM.[6] Each application was to be for an amount roughly equal to the value of the work completed during the preceding month.[7] On the same day, Villaje, DBBM, and Villaje's general contractor, Andres Holding Company ("Andres"), entered into a Construction Loan Disbursement Agreement.[8] The agreement established the specific process by which Andres and Villaje would apply for advances of mortgage proceeds from DBBM. In essence, the agreement required Andres to prepare a Contractor's Requisition for Payment ("Contractor's Requisition") and to submit it to Villaje.

---

[2] *See id.*

[3] *Id.*

[4] George Geis, the sole principal of Villaje, purchased Villaje's claims from Villaje's trustee in bankruptcy. Geis thus assumed Villaje's position as the Plaintiff in this action. The fraudulent conveyance cause of action that is the subject of this Order, however, is asserted by Geis in his individual capacity as an unsecured creditor of Villaje.

[5] Docket no. 98, Exhs. 1, 1-A.

[6] Docket no. 94, Exh. 1.

[7] *See id.* ("Applications for advances with respect to construction items shall be for amounts equal to (i) the total value of classes of the work acceptably completed, plus (ii) the value of materials and equipment not incorporated in the work, but delivered to and suitably stored at the site; plus (iii) the value of components stored off-site in compliance with acceptable HUD requirements; less (iv) 10 percent (holdback) and less prior advances.").

[8] *Id.*, Exh. 2.

Villaje was to prepare and sign an Application for Issuance of Mortgage Proceeds ("Proceeds Application") and forward the application with the Contractor's Requisition to DBBM.[9] DBBM would then review the forms, sign the Proceeds Application, and advance the loan proceeds to Villaje.[10]

Until approximately February of 2004, loan advances were made directly to a commercial bank account under the name "Villaje del Rio, Ltd."[11] From this account, Villaje directed payment to Andres and other third parties, including Goldbrick, Inc., Geis' construction company.[12] After approximately February of 2004, DBBM began to advance loan proceeds through Alamo Title Company ("Alamo Title"), and Alamo Title subsequently disbursed the funds as directed by Villaje and Andres.[13]

Some time after construction began, Villaje and Andres began to dispute proposed variations to the construction plans and the amounts Andres was requesting in its Contractor's Requisitions.[14] Villaje claimed that the requests exceeded the value of work performed and contained requests for work for which Andres had already billed and been paid.[15] Villaje thus refused to approve the

---

[9] *Id.*

[10] *Id.* & Exhs. C, L.

[11] *Id.*, Exh. L

[12] *Id.*

[13] *Id.*

[14] *See* docket no. 18, Exh. K ¶¶ 4-6; Declaration of George Geis (docket no. 24) ("Geis Decl.") ¶ 4.

[15] Geis Decl. ¶ 4.

requests or forward the requisitions to DBBM.[16] As a result, DBBM ceased making loan disbursements, and Andres stopped receiving funds to cover its construction costs.[17] Geis claims that DBBM's representative eventually forced Villaje to approve Andres' requests by threatening otherwise to declare Villaje in default of the note and to transfer the note to HUD for foreclosure.[18]

Villaje subsequently approved multiple requests for funds from Andres, which Geis claims Villaje would not have approved but for the threat of default.[19] Specifically, Geis claims that the amounts requested continued to exceed the amounts for which Andres was entitled under the various contractual provisions which governed loan disbursements, threatening to put the loan "out of balance."[20]

Villaje eventually terminated Andres from the project.[21] Villaje did not find another general contractor, construction halted, Villaje failed to make required interest payments on its loan, and DBBM declared Villaje in default of the note and assigned the note to HUD.[22] HUD sold the note to Colina del Rio, LP ("Colina").[23] Villaje eventually declared bankruptcy, and Colina foreclosed

---

[16] Docket no. 18, Exh. H at 283:6-11; Exh. K ¶¶ 5-6, 11.

[17] *See id.*, Exh K ¶¶ 4-12, 17.

[18] Geis Decl. ¶¶ 5-6.

[19] Docket no. 18, Exh. K ¶¶ 15-19, 28; Geis Decl. ¶¶ 7, 9-10.

[20] Geis Decl. ¶¶ 4, 7, 9-10.

[21] Docket no. 18, Exh. K ¶ 26; Exh. 26.

[22] Docket no. 18, Exh. K ¶ 23, 26, 30; Exh. 33; Geis Decl. ¶ 11.

[23] Geis Decl. ¶ 11.

on the lien.[24]

**Procedural Background**

Prior to filing bankruptcy, Villaje instituted this lawsuit in state court, asserting causes of action against multiple Defendants, including claims against DBBM for economic coercion and tortious interference of contract.[25] DBBM, in turn, asserted counterclaims against Villaje and third-party claims against George Geis, Geis Construction, and Goldbrick, Inc. for fraud and misuse of funds. DBBM also sued Geis under an alter-ego theory for the claims it asserts against Villaje, Geis Construction, and Goldbrick, Inc. After Villaje declared bankruptcy, the case was removed to the bankruptcy court, wherein Geis purchased Villaje's litigation claims from Villaje's trustee in bankruptcy.

The case eventually made its way to this Court, wherein Geis amended the complaint to assert, in his individual capacity as a creditor of Villaje, a claim against DBBM for recovery of fraudulent conveyances under the Texas Uniform Fraudulent Transfers Act (TUFTA), TEX. BUS. & COM. CODE §§ 24.001, *et seq*.[26] Geis alleges that DBBM, by forcing Villaje to approve Andres's requests for payments, allowed Andres to be overpaid by more than $2.8 million, as measured by the percentage of construction Andres actually completed. Geis asserts that such overpayments constitute fraudulent conveyances under §

---

[24] *Id.*

[25] On March 5, 2009, the Court granted summary judgment in favor of DBBM on these causes of action. *See* docket no. 82. Geis's motion to reconsider that ruling is pending before the Court. *See* docket no. 86.

[26] *See* Pl's First Am. Compl. (docket no. 31) ¶¶ 27-31.

5

24.005(a)(2) because, by such payments, "Villaje incurred an obligation without Villaje receiving reasonably equivalent value in exchange for the obligation, and Villaje was engaged in a business or a transaction for which the remaining assets of Villaje were unreasonably small in relation to the business or transaction, and/or Villaje incurred debts beyond its ability to pay as they became due as a result of the obligations incurred to DBBM because there were not sufficient funds under the Note to complete construction."[27] Additionally, Geis asserts that such overpayments constitute fraudulent conveyances under § 24.006(a) because, by such payments, Villaje "failed to receive reasonably equivalent value in exchange for the obligations incurred and/or ... the obligations were incurred at a time when Villaje became insolvent (in that it ultimately could not pay creditors as debts became due) as a result of the additional obligations incurred."[28] Geis thus seeks judgment voiding such obligations in an amount sufficient to pay Geis's unsecured claim against Villaje.

To summarize the claims pending in this action, Geis asserts claims for recovery of fraudulent conveyances against DBBM. DBBM asserts counterclaims against Villaje and third-party claims against George Geis, Geis Construction, and Goldbrick, Inc. for fraud and misuse of funds. DBBM also sues Geis under an alter-ego theory for the claims it asserts against Villaje, Geis Construction, and Goldbrick, Inc.

---

[27] *Id.* ¶ 29.

[28] *Id.* ¶ 30.

## Summary Judgment Standard

DBBM seeks summary judgment on Geis' fraudulent transfer claims. A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the

"evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).

## Analysis

Geis seeks to avoid the obligations Villaje incurred to DBBM when DBBM made successive disbursements of funds under the terms of the promissory note between June 21, 2004 and October 14, 2004.[29]

<u>The Texas Uniform Fraudulent Transfers Act</u>

The purpose of TUFTA is to prevent debtors from defrauding creditors by placing assets beyond their reach. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.). TUFTA provides remedies to creditors of debtors who fraudulently transfer assets under certain circumstances. *See* TEX. BUS. & COM. CODE §§ 24.005-.006, .008.

In response to the motion for summary judgment, Geis contends that § 24.006(a) of the Texas Business & Commerce Code provides the appropriate cause of action. Section 24.006(a) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in

---

[29] Docket no. 98 ¶5a.

> exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Id.* § 24.006(a).

Thus, in order to prove his claim under 24.006(a), Geis must show (1) his claim arose before Villaje made the relevant transfers or incurred the relevant obligations; (2) Villaje did not receive reasonably equivalent value in exchange for the transfers or obligations; and (3) Villaje was insolvent at the time of the transfers or obligations or became insolvent as a result of the transfers or obligations. *Corpus v. Arriaga*, No 01-07-00525-CV, 2009 WL 1493031, at *4 (Tex. App.—Houston [1st Dist.] May 28, 2009, no pet h.). The parties dispute whether Villaje received reasonably equivalent value and whether Villaje was insolvent at the time of the transfers or became insolvent as a result of the transfers.

Reasonably Equivalent Value

"TUFTA defines 'reasonably equivalent value' as 'without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction.' TEX. BUS. & COM. CODE § 24.004. 'Value is determined as of the date of the transfer.' *Mladenka v. Mladenka*, 130 S.W.3d 397, 407 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (analyzing 'reasonably equivalent value' in section 24.004) (citing *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000))." *Corpus v. Arriaga*, 2009 WL 1493031 at *5.

Geis first contends that the issue of whether the debtor received

9

reasonably equivalent value "is a jury question, which precludes entry of summary judgment." While the issue is "largely a question of fact," *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990), this does not preclude a court from deciding that issue on summary judgment where no genuine issue of material fact exists. *See, e.g.*, *Yokogawa Corp. of America v. Skye Intern. Holdings, Inc.*, 259 S.W.3d 266, 271 (Tex. App.—Dallas 2005, no pet.) (affirming trial court's grant of summary judgment in favor of defendant on issue of reasonably equivalent value). The Court may therefore consider whether summary judgment is appropriate on the issue of reasonably equivalent value.

Because Geis asserts in this action a fraudulent conveyance claim against DBBM, the Court analyzes the transfers Villaje made to DBBM and/or obligations it incurred to DBBM. It is undisputed that, in exchange for each of DBBM's loan advances, Villaje incurred a corresponding obligation to repay the amount of the advance. It is also undisputed that, with each advance, DBBM obtained from Villaje a lien on the construction project in the amount of each loan advance. Thus, with each loan advance that Geis identifies, Villaje incurred a corresponding obligation of equal value and made a transfer – by creating a lien[30] – of equal value. Villaje therefore received reasonably equivalent value in exchange for each transfer made to DBBM and each obligation incurred. *See, e.g.*, *First Nat'l Bank of Seminole v. Hooper*, 104 S.W.3d 83, 84 ("[A]s a matter

---

[30] As used in the TUFTA, "[t]ransfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." TEX. BUS. & COM. CODE § 24.002(12).

of law, the value of an interest in an asset transferred for security is reasonably equivalent to the amount of debt that it secures."); *Yokogawa*, 159 S.W.3d at 271 ("In the securities and purchase agreement, Skye International, Moore, and Trojan agreed that $600,000 represented the fair market value of the loan. The value of the security interest granted to Moore and Trojan can be no more than $600,000, the amount of the loan. *See Hooper*, 104 S.W.3d at 86. In total, Moore and Trojan loaned $600,000 to Skye International. Thus, Moore and Trojan gave reasonably equivalent value as a matter of law.").

In discussing whether Villaje received reasonably equivalent value for each obligation incurred or transfer made, the parties focus on whether and the extent to which the proceeds of each loan advance eventually were paid to Andres in excess of the percentage of completion of the construction project. However, the parties' arguments analyze the wrong transfers. Specifically, the summary judgment evidence indicates that Villaje and/or Alamo, and not DBBM, transferred to Andres loan proceeds received from DBBM, purportedly representing the percentage of construction Andres completed during the preceding month. To the extent Geis seeks to undo "overpayments" purportedly made to Andres, he may have a cause of action against Andres, the transferee of the purported fraudulent transfers.[31] For purposes of this motion, however, the summary judgment evidence indicates merely that Villaje incurred

---

[31] Indeed, Geis asserts a fraudulent transfer cause of action against Andres in another lawsuit. The claim is based on the same allegations as those that form the basis of Geis' claim against DBBM. *See Geis v. Andres Holding Corp.*, Civil Action No. SA-09-CA-127-XR (W.D. Tex. filed April 6, 2009).

obligations and made transfers to DBBM only in amounts Villaje received loan disbursements from DBBM.

The uncontroverted summary judgment evidence thus indicates that Villaje received reasonably equivalent value in exchange for the transfers made to DBBM and the obligations incurred to DBBM. Therefore, summary judgment in favor of DBBM on Geis' fraudulent transfer claim is appropriate. Because this finding disposes of the cause of action, the Court need not consider the issue of Villaje's solvency.

## Conclusion

Defendant's Motion for Summary Judgment on Claims for Fraudulent Conveyance (docket no. 94) is GRANTED. DBBM's counterclaims and third-party claims remain pending.

It is so ORDERED.

SIGNED this 12th day of August, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE