# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| VILLAJE DEL RIO, | § | |
| | § | |
|    *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. SA-07-CA-947-XR |
| | § | |
| COLINA DEL RIO, et al. | § | |
| | § | |
|    *Defendants.* | § | |

## ORDER

On this date the Court considered Plaintiff's motion for reconsideration (docket no. 86).

## Background

On March 5, 2009, the Court granted partial summary judgment in favor of Defendant DB Berkshire Mortgage (DBBM) on Plaintiff's claims for tortious interference and economic duress. Docket No. 82. The Court held that, whether or not DBBM tortiously interfered with Plaintiff's contract with the general contractor, Andres, DBBM was entitled to summary judgment under the affirmative defense of justification. Similarly, the Court held that Plaintiff's economic duress claim failed because DBBM was legally justified in its actions. Plaintiff seeks reconsideration of the Order.

## Standard for Reviewing Plaintiff's Motion

The Federal Rules of Civil Procedure do not recognize a "motion for reconsideration" by that name. *See Lavespere v. Niagara Mack & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1991). However, the Fifth Circuit has held that a motion for reconsideration should be treated as a motion to alter or amend judgment under Rule 59(e) if it is filed within ten days of the judgment at issue; otherwise, it is considered a motion for relief from judgment under Rule 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 327 n.1 (5th Cir. 2004). The Court rendered the partial summary judgment order at issue on March 5, 2009, and Plaintiff filed its motion for reconsideration on March 19, 2009, within ten days of the order within the meaning of the Federal Rules of Civil Procedure.[1] Therefore, the motion to reconsider must be evaluated as a motion to alter or amend judgment under Rule 59(e).

A district court has considerable discretion to grant or to deny a motion under Rule 59(e). *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). The court must "strike the proper balance" between the need for finality and "the need to render just decisions on the basis of all the facts." *Id.* at 355. In order to prevail on a Rule 59(e) motion, the movant must show at least one of the following: (1) an intervening change in controlling law; (2) new evidence not previously available; (3) the need to correct a clear or manifest error of law or fact; or (4) manifest injustice. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir.

---

[1] *See* FED. R. CIV. P. 6.

2002).

**Plaintiff's Arguments**

Plaintiff argues that the Court relied on manifest errors of fact or law in granting the Motion for Partial Summary Judgment. *See* docket no. 86 at 1 n.1. Plaintiff contends:

> (1) "[A] material issue of fact exists as to the linchpin of the Court's opinion, i.e. whether a default existed under the Building Loan Agreement (or other loan documents) as of the June 10, 2004 meeting";
>
> (2) "[T]he Court's opinion does not address the interference and coercion that occurred at each pay requisition/draw request stage after the meeting"; and
>
> (3) "[T]he Court's opinion does not focus on the nature of the threat asserted."

Docket no. 86 at 1.

**Analysis**

**I. Default**

The Court concluded that the uncontroverted summary judgment evidence indicated that Villaje was in default of the Building Loan Agreement because the Villaje del Rio project was being constructed according to a set of plans that had not been properly approved. The Court thus concluded that DBBM was justified in making the alleged threat to declare Villaje in default of the Building Loan Agreement because Villaje was acting pursuant to its contractual right, or at least a colorable right exercised in good faith.[2] Plaintiff contends that the Court erred

---

[2] Justification is an affirmative defense to a claim for tortious interference with contract based on either the exercise of (1) one's own legal right or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken. *Tex. Beef Cattle Co. v.*

3

in concluding that the uncontroverted summary judgment evidence indicated that Plaintiff was in default of the Building Loan Agreement.

The Court found ample evidence in the summary judgment record supporting the conclusion that construction was proceeding in a way that did not comply with original specifications, and that Villaje failed to obtain DBBM or HUD's prior written approval for the variations, as required under the Building Loan Agreement. *See* docket no. 82 at 8-13.[3] The supporting evidence includes the following deposition testimony of Plaintiff George Geis:

Q: Mr. Geis, after closing, did the engineer change the plans?

A: Yes.

---

*Green*, 921 S.W.2d 203, 211 (Tex. 1996). If a defendant cannot establish a legal right as a matter of law, he may prevail on his justification defense if (1) the defendant interfered while exercising a colorable legal right and (2) the defendant exercised the colorable legal right in good faith. *Id.* Because justification is an affirmative defense, the defendant bears the burden of proving the defense.

[3] For example, the relevant contractual provisions required that Villaje obtain *prior written approval* from DBBM and HUD. The Court identified the following contractual provisions supporting this conclusion, which Plaintiff did not dispute:

> [Villaje] shall complete ... a project in accordance with Drawings and Specifications filed with the Commissioner [of HUD] . . .. Changes in the Drawings and Specifications, or changes by altering or adding to the work contemplated, or orders for extra work, or which change the design concept, may be effected only with the prior written approval of the Lender and the Commissioner and under such conditions as either the Lender or the Commissioner may establish. Building Loan Agreement (Docket no. 18, Exh. 3) ¶¶ 2-3.

> [Villaje] certifies to [HUD] ... [t]hat the Project will be constructed in accordance with applicable local, State, and Federal Building Codes, the terms of the Construction Contract, if any, and with the "Drawings and Specifications". . .. Mortgagor's Certificate (Docket no. 18, Exh. 4) ¶ 6.

> Changes in the Drawings and Specifications or any terms of the Contract Documents, or orders for extra work, or changes by altering or adding to the work, or which will change the design concept, may be effected only with the prior written approval of the Owner's Lender and the Commissioner and under such conditions as either the Lender or the Commissioner may establish. Construction Contract Cost Plus (Docket no. 18, Exh. 6) ¶ A.

4

Q: Okay. And were those changes of the plans approved by HUD at the time of the changes?

A: They were approved by the HUD inspector.

Q: The question again: Were they approved by HUD – At the time the changes were made, did HUD approve the changes?

A: A HUD inspector did.

Q: Other than the HUD inspector, were the changes approved by HUD?

A: I don't know.

Q: Do you recall HUD expressing concerns about changes to the plans?

A: Yes.

Q: Do you recall HUD requiring you to seek their approval for changes of the plans?

* * *

A: Yes.

* * *

Q: You said the inspector approved it. Was HUD's requirement that they approve it after the alleged approval of their inspector?

A: HUD's requirement was a change order.

Q: Okay. A change order to the contract?

A: Yes.

Q: Okay. Is it your position that HUD did not have the authority under the contracts to require such a change order?

* * *

A: No, they require a change order.[4]

The Court further relied upon ample summary judgment evidence to conclude that the lack of approval constituted a default and provided DBBM the right to declare a default. *See id.* Again, this included Geis's own testimony:

Q: Is it your position that Deutsche would not have the right to put the loan back to HUD?

A: It's my position that Deutsche had the right.

Q: To put the loan back to HUD?

A: Uh-huh.

Q: So when Deutsche threatened, using your words, –

A: Uh-huh.

Q: – to put the loan back to HUD, they were threatening to do something that you say they had the right to do?

A: I've got to think through this.

Q: Okay.

A: (Pause.) Yes, I thought they had the right to do it.[5]

In the motion to reconsider, Plaintiff contends the Court did not properly consider the portion of George Geis's declaration, submitted in response to the summary judgment motion, in which George Geis states:

> At no time was the Project constructed on plans or specifications that had not been approved by DBBM and HUD. The project was, in fact, constructed on the plans as permitted by the City of San Antonio.

---

[4] Docket no. 82 at 9-11 (citing deposition testimony of George Geis).

[5] *Id.* at 11-12 (citing deposition testimony of George Geis).

6

> The only variations that were not on the permitted set of plans related to structural issues that arose after permitting which did not require re-permitting, and which DBBM and HUD approved. The City also required a revision to reflect the plumbing and electrical riser diagrams, which DBBM and HUD likewise approved. In fact, I specifically addressed the issue in a letter to Ms. Brownley dated April 7, 2004 (Exhibit G hereto), and no one objected and Ms. Brownley did not respond.

The federal circuits "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (collecting cases, including *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984)). Thus, Geis's declaration cannot create a fact issue merely by contradicting his earlier testimony that a change order was required for proper approval of certain alterations. Moreover, Geis's declaration fails to explain the glaring issue he identified in his former testimony – no change order was obtained for the alterations, which he admits was required under the terms of the Building Loan Agreement. Although Geis may have informed certain of DBBM's or HUD's representatives of the changes in plans, he fails to address the failure to obtain prior written approval via the change order process as required under the terms of Villaje's contract with DBBM. Therefore, Geis's declaration fails to create a genuine issue of material fact regarding whether Villaje obtained the *appropriate* prior written approval via the change order process as required by the Building Loan Agreement.

Geis further cites to his testimony that a HUD inspector was aware of the construction activities and any changes in construction plans. Geis failed to provide evidence, however, that this obviated the need for Villaje to comply with the contractual provisions that required Villaje to obtain prior written approval of the changes. Geis contends that HUD approval was obtained each time the HUD inspector signed documents required for loan advances. Geis cites to a provision in the HUD MAP Guide which charges the inspector with ensuring that construction conformed to drawings, specifications, and sound construction practice within the scope of the contract. However, the MAP Guide merely sets forth the inspector's duties. It does not establish that the inspector's approval of requests for loan advances is an appropriate alternative to the requirement that Villaje obtain prior written approval from HUD.

Geis cites to provisions in the Project Manual to support his conclusion that "minor changes" may occur without prior written approval. Geis, however, does not argue or cite evidence to suggest that the variances at issue were "minor changes."[6] Further, the Project Manual requires such changes to be made "by written order."[7] Geis cites no written order illustrating the changes. Geis further cites to the Project Manual to suggest that certain changes may occur in the absence of a change order should Andres and Villaje agree to such a change and memorialize the change with a written Construction Change Derivative.[8] Again,

---

[6] *See* docket no. 24, Exh. B at 21-22.

[7] *See id.*

[8] *See id.*

however, Geis fails to direct the Court to any written Construction Change Derivative authorizing the changes at issue. Accordingly, these exceptions to the rule that a change order was required do not appear to apply.

Geis also contends that the MAP Guide permits changes to occur without prior approval in order to avoid halting construction. The MAP Guides states "[t]he only time a change can be made without prior written approval of the mortgagee and HUD is in emergencies that: Endanger life or property or [h]alt construction."[9] Geis submits no evidence that either condition was met. Further, the MAP Guide nonetheless requires in such situations that "the Architect must notify the Lender and HUD and, as soon as possible, submit" a change order.[10] Therefore, under the evidence, the MAP Guide does not provide an applicable exception to the requirement that Villaje have obtained prior written approval through the change order process.

Geis further contends that the Court erred in relying on Geis's testimony that a default occurred. Geis contends that he was merely stating that "DBBM had the right to return the Note under the relevant agreements, not that there was a present basis to do so." Even accepting this argument, the remainder of the summary judgment evidence supports this conclusion. Most importantly, the Building Loan Agreement provides:

> If the Borrower at any time prior to the completion of the project abandons the same or ceases work thereon for a period of more than 20 days or fails to complete the erection of the project strictly in

---
[9] Docket no. 18, Exh. 11 at 22.

[10] *Id.*

9

accordance with the Drawings and Specifications, or makes changes in the Drawings and Specifications without first securing the written approval required by paragraph 3 hereof, or otherwise fails to comply with the terms hereof, any such failure shall be a default hereunder, and the Lender, at its option, may terminate this agreement.[11]

Having concluded that construction was proceeding that varied from the construction plans and for which there was no prior written approval, under the terms of the Building Loan Agreement, Villaje was in default, and DBBM had the right to terminate the agreement.

**B. Coercion Occurring After April 2004**

Geis next contends that the summary judgment order improperly "focuses on the existence of an alleged default that justified DBBM's actions at the June 10 meeting," when the coercion and interference continued to occur at each draw request thereafter. Geis contends that no evidence existed that Villaje continued to be in default after April 2004. This is incorrect. The evidence suggests that, as late as April 2004, Villaje was in default by way of the unapproved variances identified in the Court's summary judgment order. No evidence exists that the variances were ever cured or that appropriate change orders ever obtained.[12] It is reasonable, therefore, to infer that Villaje remained in default thereafter.

**C. Nature of the Threats and Interference**

Finally, Geis contends that DBBM's alleged threats were not justified

---

[11] Docket no. 18, Exh. 3 ¶ 9.

[12] Geis stated by affidavit that "no default existed" at the time of the June 2004 meeting, but this statement, which is really a legal conclusion, again encounters the problem that it contradicts his prior testimony without explanation. Geis does not address the failure to obtain the change order that he previously identified in his deposition.

because they were not aimed at fixing the default. Namely, DBBM did not seek to remedy the existing variances but instead sought to coerce Villaje to approve an unrelated change order and pay requisition. Geis did not clearly advance this argument in response to the motion for summary judgment. Nor does Geis provide legal authority to suggest that the mismatch between threat and remedy was material. Regardless, the summary judgment evidence indicates that DBBM provided Villaje a choice between approving a change order and pay requisition or DBBM exercising its legal right under the contract to declare Villaje in default.[13] Accordingly, this does not change the Court's conclusion that DBBM merely threatened to exercise a right it possessed at the time of the alleged threat. The Court cannot conclude that the summary judgment order suffers from manifest error of fact or law.

**Conclusion**

Plaintiff's motion to reconsider (docket no. 86) is DENIED.

It is so ORDERED.

SIGNED this 14th day of August, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[13] It is undisputed that Geis attended the June 10, 2004 meeting with his attorney, that no physical threats were made, that Geis was free to leave the meeting at any time, and that Geis was given some time to think about the proposed settlement before he agreed to it. If Geis was concerned at the time that DBBM lacked the right to declare him in default, it is unclear why Geis did not seek emergency relief through the justice system.